## ASHBROOK v. THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, *Appellant.*

1. **Insurance:** PAYMENT OF PREMIUM: RECOVERY OF SUM INSURED. The right to recover the amount of the sum insured in a policy of life insurance depends upon the fact of the payment of the premium at the time agreed upon in the policy, or within the time to which payment had been extended, where there was an agreement to extend the time of payment.

2. ——: FAILURE TO PAY PREMIUM: TERMINATION OF CONTRACT. The failure to pay the premium at the time specified in the policy will terminate the contract of insurance, where nothing more appears.

3. ——: ——: PAID–UP POLICY. Where plaintiff, by the terms of a contract of insurance, is entitled on certain conditions to a paid-up policy, but there is a further stipulation that, if the premium should not be paid on or before the agreed dates, the company would not be liable for the sum assured, and the policy should determine, and all payments be forfeited to the company, and she makes demand for a paid-up policy, but does not pay or offer to pay the annual premiums when due, or within the time to which payment had been waived, she thereby abandons any right to claim the full amount specified in the policy, upon the refusal of the company to issue a paid-up policy.

4. ——: FORFEITURE OF POLICY. To produce and bring about a forfeiture of an insurance policy for failure to pay the premium, it is not necessary to make such declaration on the books of the company.

5. ——: PAYMENT OF PREMIUM, WAIVER OF: EVIDENCE. An insurance company may waive prompt payment of the premium, and in such case, the entry of the declaration of forfeiture for non-payment and the date thereof, may be looked to as evidence of the duration of the waiver.

*Appeal from St. Louis City Circuit Court.*—HON. W. H. HORNER, Judge.

REVERSED AND REMANDED.

*Noble & Orrick* for appellant.

(1) The failure to pay the premium by the terms of the policy authorizes the forfeiture. *Thompson v. Insurance Co.*, 104 U. S. 252, 260. (2) A paid-up policy would have required the payment of the interest due on the four notes, which was not tendered; otherwise defendant would have been required to carry the risk for nothing. There was no surrender of the policy. *Smith v. Ins. Co.*, 4 Bigelow's Ins. Reports, 421. (3) If defendant did wrongfully refuse to issue a paid-up policy, such refusal did not require defendant to carry the risk for five thousand dollars, as fixed by the original policy, but at most would only entitle plaintiff to recover, in a proper proceeding, the value of such paid-up policy improperly refused. 61 N. Y. 594; *Ins. Co. v. Twining*, 12 Kansas; *Oliver v. Connecticut*, 2 Curtis, 277; *Eureka v. Robinson*, 56 Penn. 82, 256; *Hubbard v. Ins. Co.*, 33 Iowa, 325; *Fuller v. Ins. Co.*, 36 Wis. 509. If the assured demands a paid-up policy and is entitled to it, the terms of such paid-up policy are to control and limit his rights in case of death. (4) For failure to pay this interest the paid-up policy, if issued, would have lapsed. *Patch v. Ins. Co.*, 44 Vt. 481; *Anderson v. Ins. Co.*, 5 Bigelow, 527; *Wall v. Ins. Co.*, 36 N. Y. 157; *Ins. Co. v. Harlan*, 56 Miss. 512; *Moser v. Ins. Co.*, 2 Mo. App.; *Williams v. Ins. Co.*, 19 Mich. 469. (5) A refusal, although unwarranted by the terms of the original policy, to issue a paid-up policy, is not a waiver of payment of subsequent premiums due on the original policy as claimed by plaintiff, and does not estop the defendant from claiming that the policy has lapsed for failure to pay such subsequent premiums.

*David Murphy* for respondent.

There were, in the trial of the case below two propositions relied on by plaintiff for a recovery: (1) The

offer to surrender and receive a new policy, which
excused the payment of the premium due July 13, 1877,
resting on which, plaintiff was not required to do any.
thing more.    (2)  The matter set up in the replication
as a defence against defendant's claim of forfeiture,
*i. e.*, waiver of right of forfeiture, and the keeping alive
the original policy by the choice and election of defend-
ant, either of which were sufficient, and both of which
were found to be sustained by the evidence in the case.
*Hathorn v. Germania Co.*, 55 Barb. 28 ; *Hollingsworth
v. Ins. Co.*, 45 Ga. 294 ; *McLean v. Ins. Co.*, 3 Lans.
(Mich.) 421 ; *Dean v. Ins. Co.*, 62 N. Y. 642 ; *Landis v.
Ins. Co.*, 56 Mo. 591 ; *Lymann v. Ins. Co.*, 14 Allen
(Mass.) 329 ; *Chapman v. McIllwrath*, 77 Mo. 38.    The
general principles of proceedings on policies against fire
are applicable to those on lives.    Angell F. & L. Ins.,
sec. 341, p. 374 ; 2 Greenl. on Evid. (14 Ed.) sec. 409, p.
403 ; Ellis on Fire & Life Ins. 161.    The holder of a
policy, wrongfully dealt with by the insurer, is not
limited to his bill in equity for specific performance.
*McKee v. Ins. Co.*, 28 Mo. 383 ; *Shaw v. Ins. Co.*, 69
N. Y. 286 ; *Day v. Ins. Co.*, 45 Conn. 480 ; *Miesel v.
Ins. Co.*, 76 N. Y. 120.    The policy was not forfeited
during the lifetime of the insured, it was not cancelled
in the manner prescribed in the policy ; but, on the
contrary, was kept open for the payment of premiums
until the death of the insured, and whether by the fail-
ure, neglect, or refusal of the company is immaterial.
*Hanley v. Ins. Co.*, 69 Mo. 380 ; *Miesel v. Ins. Co.*, 76
N. Y. 120 ; *Johnson v. Douglas*, 73 Mo. 168 ; *Hayner v.
Ins. Co.*, 64 N. Y. 435.

BLACK, J.—The defendant, by its policy, dated the
thirteenth of July, 1868, insured the life of Obadiah
Ashbrook in the sum of five thousand dollars for the
sole use of his wife, the plaintiff, on the plan of annual
payments.    The consideration was a premium of one

hundred and ninety dollars, to be paid on the thirteenth of July of each year. The policy contains this stipulation:

"And the said company do further promise and agree, that, if after having received not less than three (3) annual premiums, this policy shall be surrendered while in force, a new policy will be issued for the whole amount of even dollars of premiums received by the said company (subject to any indebtedness on account of premiums), without subjecting the assured to any subsequent charge, except the interest annually in advance on all indebtedness on this policy."

Other agreements therein contained are, in effect, that if the premiums should not be paid, on or before the agreed dates, then the company should not be liable for the sum assured, and in such case the policy should determine, and all payments should be forfeited to the company. The premiums were paid for more than three years, namely, up to July 13, 1877. The insured had given to the company three notes, each due in one year, with six per cent. interest payable in advance, for the one-half of the premiums for the years beginning on the thirteenth of July, 1868, 1869, and 1870. The annual interest on these notes became due on the thirteenth of July, 1877, and neither the interest then due, nor the premiums for that or any subsequent year, was ever paid. Ashbrook, the insured, died on the sixteenth of January, 1881.

The petition states that, while the policy was in full force, plaintiff offered to surrender it, and at the same time she demanded a paid-up policy; but that the defendant, during the life of the insured, failed and refused to accept the surrender, and refused to issue a paid-up policy as it had agreed to do. It is further alleged that the company elected to keep the policy in full force and effect. The answer puts in issue these allegations of the petition, and sets up the failure of the

insured to pay the premiums and interest due in 1877, and that by reason of all which it thereafter and in the same year cancelled the policy. To this plaintiff replied that defendant waived prompt payment of the premiums for 1877, and gave her further time to pay the same, or to surrender the policy for a paid-up one, and that the policy was thus kept alive to the death of the insured. The court found for the plaintiff in the full amount of the policy, less unpaid premiums and the three notes; and the defendant appealed.

For the plaintiff, there is evidence tending to show that Levi Ashbrook, a brother of the deceased, paid all the premiums that were paid on this policy; that just before the thirteenth of July, 1877, he saw the defendant's agent at St. Louis, and expressed a doubt as to his ability to pay the premiums then coming due, and stated that if he could not pay the same, he wanted a paid-up policy; that the agent then told him to let the matter stand for a time and see what he could do; that within two or three months after the premiums became due, he demanded a paid-up policy, but the agent then claimed that the policy had become forfeited, and declined to take any steps toward the issuance of a paid-up one; that as late as September, 1877, the defendant was willing to receive the interest and premiums due in the previous July.

For the defendant, the evidence is to the effect that Levi Ashbrook, having failed to pay the interest and premiums due in July, 1877, offered to give his note due at sixty or ninety days for the amount due, but the agent declined to take the note. It appears Levi Ashbrook and his brother, James E., had paid-up policies in the same company, payable to their respective wives. These policies, Levi offered to surrender to the company, asking that their cash value be credited to the policy on the life of Obadiah. The company declined the offer when made to the agent at St. Louis, and when

made directly to the company in September, 1877. The company made an entry on its books in December, 1877, showing a forfeiture of the policy for non-payment of premiums. There is also evidence tending to show that no demand for a paid-up policy was ever made until after the death of the insured, and before proof of death, and that when the demand was made, the death of the insured was not communicated to the company ; and that the efforts made by Levi were to continue the policy for the full amount, and not to procure a paid-up policy.

It is perfectly plain that the judgment of the circuit court for the amount of the policy cannot and ought not to stand. It is not claimed that the premiums and interest due in July were ever paid or tendered to defendant. It is not clear that the waiver of payment was for a longer period than thirty days, the time usually allowed ; and the very most that can be claimed for the evidence as to a waiver is, that Levi Ashbrook was to have a reasonable time after the thirteenth of July, 1877, to determine whether he could pay the amount due; or take a paid-up policy. No pretense can be made that this right extended to a period later than the date at which the company made the entry of forfeiture. Before that, he had been notified that the policy had ceased to be of any binding force. The right of the plaintiff to recover the amount of five thousand dollars depends upon the fact that the premium was paid at the time agreed upon in the policy, or within the time to which payment had been extended. Such payment was not made. Indeed, on the face of the petition, this suit is one to recover because of a refusal of the company, in 1877, to issue a paid-up policy. The plaintiff having never paid, or offered to pay, the annual premium can be in no better position than she would be if she had received a paid-up policy. The company was not bound to take the notes offered as a payment for the 1877

premium, nor was it bound to purchase the two policies offered to it. If the plaintiff was entitled to a paid-up policy and requested one with an offer to surrender the old policy, and the company wrongfully refused to issue a new policy, still such refusal did not have the effect of continuing the risk for five thousand dollars, to the death of the insured in 1881. The demand for a paid-up policy, and the failure thereafter to pay, or offer to pay, the annual premiums when due, or within the time to which payment had been waived, was an abandonment of any right to claim the full amount specified in the policy. There is no evidence in this case upon which the judgment recovered by the plaintiff can be sustained.

The failure to pay the premium at the time specified in the policy terminated the contract of insurance, nothing more appearing. To produce and bring about a forfeiture for non-payment, it was not necessary to make such a declaration on the books of the company. The company could, however, waive prompt payment, and, in connection with the other evidence, we may look to the fact that the company did make such declaration and the date thereof as evidence tending to determine the duration of the waiver. For various reasons, the defendant insists that the plaintiff cannot recover the amount to which she would have been entitled on a paid-up policy; but this aspect of the case was not considered by the trial court, nor presented by any of the instructions refused. We do not, therefore, consider any of the questions which may arise should plaintiff make such a claim.

The judgment is reversed and the cause remanded. Sherwood, J., absent; the other judges concur.