### JOHN HANCOCK MUT. LIFE INS. CO. v. CHEVILLON.

#### No. 4372.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1931.

Rehearing Denied Feb. 16, 1931.

Frank T. Miller, John M. Elliott, and O. P. Westervelt, all of Peoria, Ill., for appellant.

Apollos W. O'Harra, of Keokuk, Iowa, and Charles J. Scofield, of Carthage, Ill., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

ALSCHULER, Circuit Judge.

The appeal is from a judgment for the face of a life insurance policy issued Octo-

ber 21, 1925. The policy specifies that "In consideration of Representations in the Application herefor, a copy of which is attached hereto, and made a part hereof, and of the premium of two hundred twenty-nine and 20/100 Dollars to be paid on delivery of this policy and of the payment of a like premium on or before the twenty-first day of October in each succeeding year until the premiums for ten full years have been paid or until the prior death of the insured, ‧ ‧ ‧ ‧ " appellant insures the life of John C. Chevillon in $10,000 during the term of ten years, payable upon his death within such term to appellee, his brother. Further relevant provisions of the policy appear in the margin.[1]

In the application for the policy it is specified that the premium payments shall be made semiannually, each payment to be $116.-90. The first five semiannual payments were made, but the sixth, due April 21, 1928, was not; and on July 13, 1928, the insured died.

On the face of the policy, just before its date and signatures, appears the following: "The Rights, Options, and Provisions hereinafter set forth are hereby made a part of this Contract." Nothing of this nature follows on the face of the policy, but on the back

of the policy, which is unsigned, there is printed a heading, "Non-Forfeiture Options," under which it is stated:

"After the number of full annual premiums stipulated in the table of values shall have been paid hereon, and if the payment of any subsequent premium or instalment shall be in default more than thirty-one days, then:

"Option A.—Without action on the part of the holder, the policy will be continued for its value in participating paid-up term insurance expiring at the end of the stipulated term of the policy and having a decreasing surrender value in no event less than that required by law."

Then follow options B and C, which depend on election by the insured, and are here immaterial.

There is then a "Table of Non-Forfeiture Values," from which it appears that, under option A, after the payment of premiums for three years, each $1,000 of insurance will have a participating paid-up term insurance value of $46; but no value is assigned on payment of less than three years of premiums.

Upon the failure to pay the second instalment of the third year's premium, no action was taken by either party to the contract. Appellant contends that upon failure to make this payment insured lost all rights under the policy, except to the extent specified in option A, under which appellant, conceding $230 to be due appellee, tendered that sum in discharge of its liability under the policy. It is explained that this amount was fixed because only half of the third year's premium had been paid, and that therefore only half of the paid-up insurance under option A was due.

█ For appellee it is insisted that what appears on the back of the policy is no part of it because not being "Provisions hereinafter set forth." Considerable of the briefs on both sides is devoted to this proposition, but this question we need not decide, since, by the table of values and the terms of option A, the option is not applicable where less than three years' premiums have been paid.

The policy must then be regarded as though "Option A" were no part of it. We thus have the question of the effect upon the policy of failure to pay in advance the second instalment of the third year's premium. For appellee it is contended that by the terms of the policy the unpaid instalment was not necessarily payable in advance, but might be

---

[1] "If the Insured shall die during the continuance of this policy the Company will pay the sum insured, less any unpaid balance of premium for the uncompleted policy year, ‧ ‧ ‧"

"Policy and Application the Entire Contract. This policy and the application herefor constitute the entire contract between the parties ‧ ‧ ‧ and no other person (other than appellant's president, vice president, secretary or assistant secretary) is authorized to modify or waive any of the terms and conditions of this policy, nor to extend the time for payment of premiums or other moneys due to the Company, ‧ ‧ ‧"

"Payment of Premiums. All premiums hereunder are payable in advance, annually, or in regular equivalent semi-annual or quarterly instalments at the Company's published rates, at the Home Office of the Company, or to a duly authorized agent presenting the official receipt signed by the President or Secretary, and countersigned by the agent designated on such receipt. Except as herein expressly provided, the payment of any premium or instalment thereof shall not maintain this policy in force beyond the date when the succeeding premium or instalment becomes payable."

"Grace Period. A grace of thirty-one days without interest, during which the policy shall remain in force, will be granted for the payment of premiums or regular instalments thereof, after the first. If the death of the Insured occur during the days of grace, the sum necessary to complete payment of premium for the then current policy year will be deducted from the amount payable hereunder."

"Conversion Privilege." This makes provision for an option to insured within seven years to convert the policy into a different form of policy "provided there is then no default in payment of premium ‧ ‧ ‧"

"Incontestability. This policy shall be incontestable after it shall have been in force, during the lifetime of Insured, for one year from its date, except for non-payment of premium. ‧ ‧ ‧"

paid any time during the policy year. We think the clause, "all premiums hereunder are payable in advance, annually, or in regular equivalent semi-annual or quarterly instalments," is susceptible of no other construction than that all stipulated premium payments, whether annual, semiannual, or quarterly, were payable in advance. The granting of grace "for the payment of premiums or the regular instalments thereof," would have little meaning respecting instalment payments unless they become due as specified; and on principle no reason is apparent wherefore an instalment payment should be considered upon any different basis from a yearly payment. In general, insurance premiums are payable in advance, and insurance cannot be required to be carried on credit unless such purpose can be gathered from the contract.

The semiannual payment in question became due under the terms of the policy on April 21, and its nonpayment after the grace period of thirty-one days subjected the policy and the insured to the same consequences as if the defaulted payment had been of an entire annual premium, or of an instalment payable at the beginning of an insurance year.

■ For appellee an argument is based upon the clause providing that in case of death of insured the company will pay "the sum insured, less any unpaid balance of premium for the uncompleted policy year," the insistence being that this provision indicates that the instalment payments may be made at any time during the policy year; and it is urged that if this clause is not so construed it has no meaning whatever. In this we cannot agree. The clause indicates that in case of death of insured premiums for the full year must in any event be paid the company, notwithstanding none of the instalments are then in default. This in no wise conflicts with the provision for payment of the instalments, and does not extend credit beyond the stipulated instalment paying dates. If insured died while some of the instalments were not yet due, nevertheless the balance for the full premium year would first be deducted from the policy. The clause has no reference whatever to the matter of credit or extension of time for payment of the stipulated instalments. The clause has no bearing on the time for payment of the instalments, nor on the consequences which ensue upon default in their payment. ‚ McConnell v. Provident Savings Life Assur. Soc., 92 F. 769 (6 C. C. A.); Serabian v. Metropolitan Life Ins. Co.

(Mo. App.) 17 S.W.(2d) 646, in which is cited and quoted Thompson v. Fidelity Mut. Life Ins. Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, 115 Am. St. Rep. 823; Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879.

■ Appellee further contends that in a policy like this, where there is no specific clause for forfeiture of the policy in case of nonpayment of a premium, there can be no forfeiture. To support this contention reliance is placed on the cases of Ingersoll v. Mutual Life Ins. Co., 156 Ill. App. 568, and Bolton v. Standard Life Ins. Co., 219 Ill. App. 177. Cursorily considered, these might seem to sustain the proposition. The first is complicated by facts peculiar to that case, which were doubtless influential in the decision. Apart from some significant distinctions in the terms of the policies there and here involved, the opinion stresses the fact that the policy there involved was on the ten-payment life plan, whereby, after making ten annual premium payments, the insurance became fully paid, and payable at death of insured without further premium payments. The payments were thus large enough to carry the insurance after the premium payments ceased. As to this the court said: "In considering these questions, the nature of such a limited payment life policy must ever be kept in view."

The policy here is not a ten-payment life policy, but is a so-called "term policy," in effect for ten years only, with option to the insured during the first seven years of the policy to substitute other specified forms of insurance thereafter to be effective at the premium rates prescribed. The policy resembles more nearly what in the Ingersoll Case is called "successive term" insurance, of which the opinion says: "It (the policy there in issue) is totally unlike successive term insurance in which each premium is a payment for the insurance during the term and in no part for any subsequent period."

In the Bolton Case, without considering the exceptional features of the Ingersoll Case, the principle there generally stated is reasserted, that in the absence of a specific forfeiture clause in the policy there can be no forfeiture for the nonpayment of premiums. In the Bolton opinion there appears another significant feature peculiar to that case; i. e., the course of dealing between the company and the policy holder, wherefrom it was held that forfeiture was waived. No such situation appears here, nor, indeed, is it contended that the record discloses any facts or cir-

cumstances that would even suggest appellee's waiver of any provision of the policy or estoppel to assert it.

In the case of Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 24 S. Ct. 538, 48 L. Ed. 788, it was held that no notice of forfeiture was necessary in order to terminate the policy where premium payments were not made in accordance with its terms. To like effect is Swayze v. Mutual Life Ins. Co. of New York (D. C.) 32 F.(2d) 784, and Rhodes v. Royal, etc., Ins. Co., 56 Pa. Super. Ct. 233.

But this policy has provisions which clearly indicate that the contract of insurance will not remain in force after default in payment of any premium instalment (save as to the option A, not here applicable).

The policy provides: "If the Insured shall die during the continuance of this policy the Company will pay the sum insured. * * * " And further: "Except as herein expressly provided, the payment of any premium or instalment thereof shall not maintain this policy in force beyond the date when the succeeding premium or instalment becomes payable." And in the "grace" clause it is specified: "Grace of thirty-one days without interest, during which the policy shall remain in force, will be granted for the payment of premiums or regular instalments thereof, after the first." Then there is the provision for incontestability after one year "except for nonpayment of premium."

The effect of such clauses—particularly the one providing that payment of premium instalments shall not maintain the policy in force beyond the date when the next instalment becomes payable—has been held to be the equivalent of a definite provision for forfeiture in the case of default in premium payments. Iowa Life Insurance Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204; Bogue v. New York Life Ins. Co., 103 Neb. 568, 173 N. W. 591; Elms v. Mutual Benefit Life Ins. Co., 211 Mo. App. 514, 231 S. W. 653; Rhodes v. Royal, etc., Ins. Co., supra

With this clearly intended and definitely expressed contractual intent that the policy shall not remain in force beyond the time of default in payment of the next succeeding premium instalment, we are satisfied that the policy in question ceased to be in force for any purpose after the grace period following default in payment of the sixth semi-annual premium instalment.

The judgment is reversed and the cause remanded.