## TRAVELERS INS. CO. v. WOLFE. *
### No. 6715.

Circuit Court of Appeals, Sixth Circuit.
June 6, 1935.

*Writ of certiorari denied 56 S. Ct. 158, 80 L. Ed. —.

C. M. Horn, of Cleveland, Ohio (Mc-Keehan, Merrick, Arter & Stewart, of Cleveland, Ohio, on the brief), for appellant.

A. E. Emmerman, of Cleveland, Ohio (M. J. Draegin, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The principal question presented by this appeal is whether a life insurance term policy providing for disability benefits to the insured was in force upon the date of the accident out of which the disability arose, or whether it had lapsed by the insured's failure to pay premiums. The answer to the question must depend upon whether the policy took effect as of the date therein specified as its effective date, or in view of a provision in the application, that it should not take effect unless the first premium should be actually paid, it took effect only upon its delivery, and also upon whether by the giving of a promissory note for a second premium payment by the insured to a subordinate agent of the insurer the policy was continued for the second premium year, although the note was never paid.

The appellant is the insurer. The policy was a five-year term life insurance policy, with benefits for permanent total disability. The application therefor was signed by appellee, Wolfe, on September 26, 1927. It was issued October 10, 1927, and was delivered to Wolfe by the insurer's agent, Flemming, on October 20, 1927, upon which date a note was given to the agent for the first year's premium, which was later paid. On November 14, 1928, Wolfe was injured. Prior to that, however, on October 10, 1928, he claims to have given another note to Flemming for the second year's premium. It is conceded that this note has never been paid. The plaintiff below had judgment, and the defendant company appeals.

The precise wording of the provision in the application relied upon is: "* * * And that the contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health. * * *" Upon the first page of the policy appears the following: "5. Effective Date. This insurance shall be effective from October 3d, 1927." It shall be seen that if the effective date of the insurance contract is October 3, 1927, the accident occurred outside of the first premium year, and beyond the expiration of the thirty-one-day grace period provided in the contract, but if the term began upon October 20th, the date of the delivery of the contract, the loss occurred during the first premium year. If the latter is the determining date, no consideration need be given to the problem presented by the alleged payment of the second year's premium; if the former is the critical date, it will become necessary to consider whether the second note effected a continuation of the policy for a second premium year.

■ It is briefly the plaintiff's contention that the provision in the application, which is made a part of the policy, is controlling; that by its terms the insurance contract did not come into existence until the policy was executed and delivered and the first year's premium paid; that having contracted for a five-year term, no less period of protection can satisfy the insurer's obligation, and in any event there is a conflict between the application and the policy out of which an ambiguity arises, which under familiar principles must be resolved against the insurer, by whom the contract was drawn. We have given careful consideration to this contention, but as we read the contract it is perfectly clear. Its effective date is October 3, 1927. This is the date which controls the payment of premiums, and the running of suicide, incontestable, and other clauses. There is no conflict between this provision and the provision in the application. Read together, they mean that the contract shall not take effect unless the first premium is paid while the insured is in good health, but that when it does take effect it operates from the date stated therein. This is the ordinary connotation of the terms used, and we see no occasion for giving them a strained construction.

■ The question is not new. It appears in similar, if not identical, form in many cases which have been decided against similar contentions advanced by both insurer and insured. Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102; Sellars v. Continental Life Ins. Co., 30 F.(2d) 42, 45 (C. C. A. 4); Whitney et al. v. Union Central Life Ins. Co., 47 F.(2d) 861, 864 (C. C. A. 8); Subar v. New York Life Ins. Co., 60 F.(2d) 239 (C. C. A. 6), to mention but a few. As was said in the Hurni Case, supra, "It was competent for the parties to agree that the ef-

fective date of the policy should be one prior to its actual execution or issue," or as in the Sellars Case, "Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made," or as in the Whitney Case, "There is no reason why parties cannot agree that a policy may be antedated, and that the policy shall take effect from said date agreed upon, for a policy of insurance is a voluntary contract." The contention that an insurance contract imports a risk, and that there can be no such contract until the risk is assumed, is noted and rejected by Judge Parker in the Sellars Case. It is true that in that and other cases the reason for antedating the contract was to give the insured a premium rate applying to an earlier age, but such considerations were said by the court to be "beside the point," and to the same contention the Fifth Circuit Court of Appeals in McCampbell v. New York Life Insurance Co., 288 F. 465, 469, made response that "a conclusive answer is that parties are entitled to make their own contracts."

■ The appellee endeavors to distinguish the above cases on the ground that the antedating of the policies therein was in conformity with the provisions of the respective applications, while here there is conflict. It must be borne in mind, however, that the application when made is not a contract. It may be accepted or rejected by the insurer. If accepted without qualification, and delivery and premium payment follow, a contract results. If the policy, however, does not conform to the application (though we do not agree that such is the case here), the policy, as noted in the Sellars Case, is merely a counter offer which the insured may at his pleasure accept or reject. If he does accept it, pays the premium, keeps the contract until the loss occurs, he cannot in a suit at law upon it ask to have it enforced otherwise than according to its terms. Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Taylor et al. v. American Liability Co., 48 F.(2d) 592 (C. C. A. 6). It is not, therefore, accurate to say that Wolfe was given a policy which differed in terms from that applied for without either his knowledge or consent. The terms of the policy are plain. He accepted it, paid the premium, kept it without complaint,

and it is the policy he now sues upon. As was said in Whitney v. Union Central Life Ins. Co., supra: "Nearly any kind of an agreement that is not contrary to law or public policy may be included therein. An insurer may impose such conditions as it desires and the insured can take them or go without the policy, as it may choose."

McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 14, 46 L. Ed. 64, is not in conflict with the views here expressed. The policies in that case were dated December 18th. They were delivered December 26th. The insurer urged that their effective date was December 12th, because the insured had so requested in his application. The company was held to the date named in the policy. While it was not material to recovery in that case that any later effective date than December 18th be found, the court nevertheless noted that, "notwithstanding the premiums in this instance were not actually paid and received and the policies delivered until December 26, it may be conceded that, and in accordance with the practice in such matters, the contracts of insurance commenced to run from December 18 rather than from December 26." Since the application here involved provides that the contract shall not take effect unless the first premium shall be actually paid, cases wherein the application stipulates that the contract shall not take effect until the first premium is paid, such as Prudential Ins. Co. of America v. Stewart, 237 F. 70 (C. C. A. 9), Stramback v. Fidelity Mutual Life Ins. Co., 94 Minn. 281, 102 N. W. 731, Landrigan v. Missouri State Life Ins. Co., 211 Mo. App. 89, 245 S. W. 382, are of doubtful analogy. Likewise are cases where there is clear conflict between the effective date and that given in the policy for the payment of premiums, such as Harvey v. Union Central Life Ins. Co., 45 F.(2d) 78 (C. C. A. 4).

■ The purpose of giving a precise effective date to the policy is to avoid the very ambiguity with respect to premium payments and lapse which is here asserted. So noted the court in Sellars v. Continental Life Ins. Co., supra, and so the facts here demonstrate. The original petition alleged that the policy was delivered on or about October 10th. A pretrial deposition of the plaintiff gave Oc-

tober 10th or 12th as the date of delivery. The company's agent testified that the policy was delivered on October 12th. Suit was not brought until November 12, 1932, which further demonstrates the advantage to both contracting parties of avoiding by specific recitals, issues, for decision of which resort must be had to the uncertain memories of witnesses after the lapse of years. We are aware of the purpose of modern legislation and the trend of decision to safeguard the insured against the intricacies of complicated insurance contracts. This does not require us, however, to ignore the simple in a search for the complex, or strain for construction which while it may in the one case save a policyholder from forfeiture or lapse, may in others deprive parties in interest of the protection of the suicide or incontestable clauses. The court erred in instructing the jury that the policy took effect upon the date of delivery.

We come then to the effect of Wolfe's second note, claimed to have been seasonably given to the company's agent for the second year's premium. While the giving of the note was denied, there was evidence to carry the issue to the jury, and the verdict establishes delivery for present purposes. We are concerned only with its legal effect. If it constituted payment of the second year's premium, the insurance was in force at the time of Wolfe's accident without regard to the effective date of the policy.

 Flemming was a subordinate, and in no sense a general agent. The fact that he had an office with the company agency in Cleveland, took applications for insurance of various kinds, delivered policies, collected initial premiums in the case of life insurance, and to some extent renewal premiums on other classes of insurance, does not make him a general agent. His authority was limited by the terms of his agency contract, and by the usual policy provisions restricting the authority of agents to alter contracts, or extend the time for payment of premiums, except by the written agreement of the company signed by the president or one of its vice presidents or secretaries. Flemming's agency contract not only provided that he had no authority to vary contracts or extend the time for premium payments, but also forbade the taking of payment "other than in current funds."

 The insurer undoubtedly has the right to withhold from its agents any credit giving authority, Dodd v. Ætna Life Ins. Co., 35 F.(2d) 673 (C. C. A. 6), and in the absence of authority to extend credit a transaction between the agent and the insured whereby a note is given for the premium must be held to be a private arrangement between them. Bradley v. New York Life Ins. Co., 275 F. 657 (C. C. A. 8). Payment of stipulated premiums on or before the date fixed is of the very essence and substance of an insurance contract, Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416, and insurance cannot be required to be carried on credit unless such purpose can be gathered from the contract. John Hancock Mutual Life Ins. Co. v. Chevillon, 45 F.(2d) 980 (C. C. A. 7). No such purpose can be gathered from the present contract as appeared in the Dodd Case, supra. In Newsom v. New York Life Ins. Co., 60 F.(2d) 241, 243 (C. C. A. 6), the policy provided for the payment of the full amount of the first premium "in cash." This phrase does not appear in the contract here involved, but where payment of a given sum is required, and nothing appears to the contrary, the necessary implication must be that payment is to be made in cash, and as was said in the Newsom Case, "A note is an agreement to pay; it is not cash." The record discloses no substantial evidence of waiver by the company of payment provisions, or of such course of conduct by it as to create an estoppel. Moss v. Ætna Life Ins. Co., 73 F.(2d) 339 (C. C. A. 6). Nor is it shown that the agent had express authority from the company to take notes for renewal premiums, or that the company subsequently, with knowledge of the facts, ratified the acts of the agent in this respect. Northern Assurance Co. v. Building Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213. The motion for peremptory instructions on behalf of the defendant having been based on the premise that the policy was not in force at the time of Wolfe's accident, either through payment of the first premium or the giving of the note for the second premium, should have been granted. It becomes unnecessary, therefore, to discuss or rule upon the remaining assignments of error.

The cause is reversed and remanded for further proceedings consistent herewith.